# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| Alexis Flint and Jamie Wood, *on behalf of themselves and all others similarly situated*, <br><br> *Plaintiffs*, <br><br> vs. <br><br> Dollar General Corporation, <br><br> Defendant. | Civil Action No.: <br><br><br><br> **COMPLAINT – COLLECTIVE ACTION** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Alexis Flint and Jamie Wood, by and through their attorneys, on behalf of themselves and others similarly situated, based on personal knowledge with respect to their own circumstances and based upon information and belief pursuant to the investigation of counsel as to all other allegations, allege the following:

## I.  INTRODUCTION

1.      "Despite the health benefits of breastfeeding for both mothers and infants, too many nursing employees face obstacles to pumping breast milk in the workplace, making it difficult to continue breastfeeding while employed. Break time and a private space to express breast milk are critical [] supports for breastfeeding employees."[1]  The House of Representatives reached these conclusions in 2021 after more than a decade of considering the plight of working mothers around the country. Since 2010, the Fair Labor Standards Act of 1938 ("FLSA") has required employers

---

[1] H.R. Rep. 117-102, at 3 (2021), *available at* https://www.congress.gov/117/crpt/hrpt102/ CRPT-117hrpt102.pdf.

Case 3:23-cv-01023    Document 1    Filed 09/29/23    Page 1 of 35 PageID #: 1

to provide nursing accommodations, but "[g]aps in the law limit access to [its] protections and le[ft] employees unable to recover in court when their employers fail to comply with the law's requirements."[2]  Therefore, on December 29, 2022, Congress passed and the President signed the Providing Urgent Maternal Protections for Nursing Mothers Act (the "PUMP Act") to extend the FLSA protections "to more employees and ensure employees can recover appropriate forms of relief in court when employers violate the law."[3]

2.     Despite already being required to comply with the FLSA breastfeeding requirements for more than a decade, after the PUMP Act came into effect in April 2023, Dollar General Corporation ("Dollar General" or the "Company") failed and continues to fail to provide proper accommodations to its nursing employees for minimum appropriate break times and space to express breast milk in private. Employees are forced to pump breast milk in unsanitary stock rooms, bathrooms, or their private vehicles because Dollar General fails to provide its employees with a "reasonable break time for an employee to express breast milk" and fails to provide a "place…that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk," all of which is mandated by the PUMP Act. Dollar General's failure to provide sufficient lactation accommodations is a systemic issue that has impacted employees at locations throughout the country.

3.     Given this nationwide issue, Plaintiffs bring this collective action lawsuit against Dollar General for violating the FLSA as amended by the PUMP Act, 29 U.S.C. § 218d(a)(1) and (2).

---

[2] *Id.*

[3] *Id.*

4.      It has long been known that breastfeeding is crucial for a newborn baby and has numerous benefits for the mother and the child. The American Academy of Pediatrics recommends breastfeeding exclusively for at least the first six months after birth and, ideally, until or after the child is twelve months of age.[4] Breast milk is an organic superfood that provides the essential nutrients and antibodies required for a baby's healthy growth and development. It can reduce the risk of various illnesses and infections and can strengthen the emotional and psychological development of the infant. Breastfeeding also has mental and physical benefits for the mother and for society at large.

5.      Not providing supportive accommodations for nursing mothers can have a negative impact on their physical, mental, and emotional health. Mothers who are unable to pump breast milk can experience engorgement, which can be painful and lead to infection. They also produce less milk for their babies. Not having sufficient time or space to pump can also result in increased feelings of stress, anxiety, and guilt for not being able to provide their babies with the best possible nutrition. Over the last ten years, multiple studies have shown that parents who did not have access to a private place to pump breast milk were more likely to experience anxiety, postpartum depression, and stress.

6.      Despite the overwhelming consensus about the benefits of breastfeeding, discrimination against breastfeeding workers remains a widespread issue. A report released by the

---

[4] Along with the World Health Organization, the U.S. Surgeon General's Office, and the American Academy of Family Physicians. *See* the Office of Personnel Management, *Guide for Establishing a Federal Nursing Mother's Program* (January 2013), at 2. Available at: https://www.opm.gov/policy-data-oversight/worklife/news/2013/1/opm-publishes-new-guide-for-establishing-a-federal-nursing-mother-s-program/ (last accessed April 11, 2023).

3

University of California in 2016 found that "three out of every five mothers work for employers who do not provide reasonable break time and private space for pumping breast milk."[5]

7.    To ensure that employers provide reasonable break times and a private, non-bathroom space for breastfeeding employees to pump at work, Congress passed the Break Time for Nursing Mothers law (the "Pumping at Work Act") in 2010, which amended the FLSA to require such accommodations for individuals who needed to express breast milk while on the job. Unfortunately, the Pumping at Work Act, § 207(r) of the FLSA, covered only non-exempt employees and had such a weak enforcement mechanism that it rendered the law "virtually useless in almost all practical application."[6] The 2022 PUMP Act corrected this defect by providing additional forms of relief for those harmed by their employer's failure to provide adequate time and space for nursing parents to pump. *See* 29 U.S.C. §§ 216(b) and 218d.

8.    Plaintiff Alexis Flint was an employee of Dollar General located at 12220 Warden Avenue in Alden, New York (Store No. 21764). She commenced her employment in July 2022, and she gave birth to her child in October 2022. When she returned to work in March 2023, she requested a private space to pump milk, but Dollar General refused to provide one for her. In this way, Dollar General deprived her of her rights as a nursing mother guaranteed by the PUMP Act to a clean and secure space to pump milk for her infant child. She was forced to pump in the bathroom, which is neither sanitary nor private and expressly prohibited under the PUMP Act.

---

[5] Morris, L., Lee J., Williams, J. C., *Exposed: Discrimination Against Breastfeeding Workers*, Center for WorkLife Law, University of California, Hasting College of the Law, Research Paper No. 328 (January 1, 2019) citing Katy B. Kozhimannil et al., *Access to Workplace Accommodations to Support Breastfeeding after Passage of the Affordable Care Act*, 26 Women's Health Issues, 6 (2016). Available at: https://worklifelaw.org/publication/breastfeeding-report/ (last accessed April 11, 2023).

[6] *Hicks v. City of Tuscaloosa*, No. 13-cv-02063, 2015 U.S. Dist. LEXIS 141649, at *99 (N.D. Ala. Oct. 19, 2015).

Dollar General also failed to provide her with adequate time to pump, oftentimes leaving her unable to pump at all.

9. Plaintiff Jamie Wood also was an employee of Dollar General located at 25 Homestead Road in Lehigh Acres, Florida (Store No. 1419). She gave birth to a child in October 2022 and when she started work in November 2022, she asked her supervisor for a private space to pump milk, but the supervisor failed to provide an adequate space for Ms. Wood to pump milk. Therefore, like Ms. Flint, Dollar General deprived Ms. Wood of her rights as a nursing mother under the PUMP Act. As a result, she was forced to pump in her private vehicle.

10. As a result of their experiences, both Ms. Flint and Ms. Wood experienced a reduction in their milk supply. The reduction in milk supply for their new babies, along with the lack of accommodations provided by Dollar General, has caused these mothers to personally endure stress, anxiety, and emotional distress.

11. It would be relatively easy for Dollar General to comply with the PUMP Act. For example, there are numerous pre-fabricated temporary spaces that are commercially available for installation. These temporary spaces are easy to set up, affordable, and would satisfy Dollar General's obligations under the PUMP Act. Examples of the spaces are those sold by Mamava,[7] Brighter Booth[8], and DayOne Baby[9], among many others. Images from those companies' web sites show how such spaces could have been integrated into Dollar General's space:

---

[7] https://www.mamava.com

[8] https://brighterbooth.com

[9] https://www.dayonebaby.com



12.     Likewise, other companies are working to accommodate breastfeeding mothers with different easy to implement options, such as dedicating a room to breastfeeding in a public stadium[10] or permitting employees to use restaurant managers' locked offices to express milk.[11] Thus, while there are many ways to accommodate breastfeeding employees, Dollar General has simply decided to not provide such accommodations.

13.     Dollar General's failure to comply with the PUMP Act has had a significant impact on Ms. Flint, Ms. Wood, and other breastfeeding Dollar General employees. Instead of supporting breastfeeding mothers, Dollar General's practices forced those mothers into a Hobson's choice between using demeaning, unsanitary spaces to express milk, abandoning pumping at work altogether, or quitting their jobs. Congress clearly declared in the PUMP Act that no mother should have to make such a choice.

14.     Plaintiffs seek redress for Dollar General's violations of the PUMP Act. Plaintiffs assert two causes of action against Dollar General's nationwide practice of failing to provide

---

[10] https://wvutoday.wvu.edu/stories/2023/09/07/new-dedicated-lactation-room-opens-to-the-public-at-milan-puskar-stadium

[11] https://www.qsrmagazine.com/outside-insights/ask-restaurant-legal-professionals-how-accommodate-pregnant-and-breastfeeding

sufficient break time and a functional place, shielded from view and free from intrusion, which may be used by an employee to express breast milk. Plaintiffs seek injunctive and declaratory relief, compensatory and punitive damages, reasonable attorneys' fees, litigation costs, and pre- and post-judgment interest.

15.     Plaintiffs bring this claim on behalf of themselves and similarly situated former and current non-executive employees of Dollar General who were expressing breastmilk at any time from December 29, 2022, to the resolution of this action and who, upon request, were denied reasonable break times to express milk or denied a private, functional space to express breast milk and who elect to opt-in to this action (the "FLSA Collective").

16.     The members of the FLSA Collective are victims of Dollar General's practice of refusing to provide sufficient break times or "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk," as required by 29 U.S.C. § 218d.

17.      Dollar General has intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective by refusing to provide accommodations that they know they are obligated to provide under the PUMP Act.

18.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the lawsuit. Those similarly situated employees are known to Dollar General, are identifiable, and can be located through Dollar General's records. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to § 216(b) of the FLSA.

## II.  PARTIES

19.    Plaintiff Alexis Flint is a former employee of Dollar General who worked as a key holder in Dollar General Store 21764 located in Alden, New York. Ms. Flint is an individual resident of Alden, New York, and a citizen of New York. During all relevant times, Ms. Flint was the mother of an infant that was breastfed and continued to be breastfed while Ms. Flint was working for Dollar General. Pursuant to § 216(b), she has consented in writing to be a party to this action. Her executed Consent to Join form is attached hereto.

20.    Plaintiff Jamie Wood is a former employee of Dollar General who worked as a cashier in Dollar General Store 1719 located in Lehigh Acres, Florida. Ms. Wood is an individual resident of Lee County and a citizen of Florida. During all relevant times, Ms. Wood was the mother of an infant that was primarily breastfed and continued to be breastfed while Ms. Wood was working for Dollar General. Pursuant to § 216(b), she has consented in writing to be a party to this action. Her executed Consent to Join form is attached hereto.

21.    At all times relevant hereto, Ms. Flint, Ms. Wood, and other similarly situated individuals have been entitled to the rights, protections, and benefits provided under the FLSA and the PUMP Act. At all times relevant hereto, Ms. Flint and Ms. Wood were "employees" of Dollar General within the meaning of the FLSA pursuant to 29 U.S.C. § 203(e)(2)(B).

22.    The members of the FLSA Collective, including Ms. Flint and Ms. Wood, are or have been employed by Dollar General in the last nine months and have requested lactation accommodation. Upon information and belief, Dollar General's practices and policies, or lack thereof, have impacted members of the FLSA Collective in the same or a similar manner across Dollar General's locations.

23. Defendant Dollar General is a multi-billion dollar corporation and the largest discount retailer in the U.S. by number of stores, with 19,147 stores located in 47 U.S. states and Mexico as of March 3, 2023. It offers a broad selection of merchandise, including consumable and seasonal items and home products and apparel. Dollar General boasts that 65.9% of its workforce is female.[12]

24. Upon information and belief, Dollar General has a centralized policy-making system whereby policies, practices, and guidelines, including with respect to lactation accommodations, are created and disseminated to the various locations from the headquarters in Goodlettsville, Tennessee.

25. Defendant Dollar General is an "employer" within the meaning of the FLSA pursuant to 29 U.S.C. §§ 203(a), (d) and was an "employer" of Ms. Flint and Ms. Wood at all times relevant hereto.

### III.   JURISDICTION AND VENUE

26. This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States.

27. This Court has personal jurisdiction over Dollar General because it is located in this District, transacts business in this District, employs people in this District, and has significant contacts with this District.

28. Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendant Dollar General is headquartered in this District. Further, a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District, and it is subject to personal jurisdiction here.

---

[12] https://www.dollargeneral.com/about-us/corporate-social-responsibility.html

## IV. <u>BACKGROUND</u>

### A. *The Benefits of Breastfeeding*

29.     There are significant and proven benefits to breastfeeding children. Breast milk is widely accepted as the optimal source of nutrition for infants, and it provides numerous protections against illnesses and diseases for infants and mothers alike.[13]

30.     Babies who are breastfed generally have better immune system development and functioning because breastmilk contains antibodies that serve to protect developing immune systems from disease.[14] As a result, babies who are breastfed tend to have fewer and less severe instances of certain short-term illnesses, including bacterial meningitis, diarrhea, ear infections, respiratory infections, urinary tract infections, and certain chronic illnesses, including diabetes, lymphoma, leukemia, hypercholesterolemia, and asthma.[15]

31.     A paper published in 2015, analyzing dozens of studies, found that breastfeeding is associated with a lower risk of childhood obesity. The paper states that breastfeeding was associated with a significantly reduced risk of obesity in children.[16]

---

[13] Am. Acad. of Pediatrics. *Technical Report: Breastfeeding and the Use of Human Milk*. Pediatrics. 2022;150 (1): e2022057988. Available at: https://publications.aap.org/pediatrics/article/150/1/e2022057989/188348/Technical-Report-Breastfeeding-and-the-Use-of?searchresult=1 (last accessed April 13, 2023).

[14] *See* Spitzmeuller, C.*,* Wange, Z., Zhang, J., Thomas, C.L., Fisher, G.G., Matthews, R.A., and Strathearn, L. (2016) *Got milk? Workplace factors related to breastfeeding among working mothers*, Journal of Organizational Behavior, J. Organiz. Behav. 37, 692–718 ; Grummer-Strawn, L.M. and Rollins, N. (2015), Summarising the health effects of breastfeeding. Acta Paediatr, 104: 1-2. https://doi.org/10.1111/apa.13136.

[15] *See supra,* n. 8.

[16] Horta, B.L., Loret de Mola, C. and Victora, C.G., *Long-term consequences of breastfeeding on cholesterol, obesity, systolic blood pressure and type 2 diabetes: a systematic review and meta-analysis*. Acta Paediatr, (2015) 104: 30-37; *see also* Yan J., Liu L., Zhu Y., Huang G., Wang P.P., *The association between breastfeeding and childhood obesity: a meta-analysis*. BMC Public Health. 2014, available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4301835/.

32.     Several studies have found that breastfeeding is associated with a lower risk of sudden infant death syndrome ("SIDS"). These studies show that babies who were breastfed for the first few months of life had a lower risk of SIDS than babies who were not breastfed.[17]

33.     The World Health Organization recommends that infants be exclusively breastfed for the first six months of life, meaning they should receive no other food or drink, not even water.[18]

34.     Although breastfeeding initiation and duration have consistently improved, one study revealed that 60% of women do not meet their breastfeeding goals.[19]

35.     Society also benefits from breastfeeding. One study showed that if 90% of women in the United States breastfed exclusively for six months, it would save the country $13 billion and prevent 911 preventable infant deaths per year.[20]

Wang Y., Zhang J., Li Y., et al.., *Breastfeeding and childhood obesity: a systematic review and meta-analysis*. JAMA Pediatr. (2016); 170(8):740–746.

[17] Thompson JMD, Tanabe K, Moon RY, Mitchell EA, McGarvey C, Tappin D, Blair PS, Hauck FR. *Duration of Breastfeeding and Risk of SIDS: An Individual Participant Data Meta-analysis*. Pediatrics. 2017 Nov;140(5): e20171324. Available at: https://pubmed.ncbi.nlm.nih.gov/29084835/ (last accessed September 22, 2023); *see also* Meek, J. Y., Noble, L. *Technical Report: Breastfeeding and the Use of Human Milk*. Pediatrics July 2022; 150 (1): e2022057989, at 7. Available at: https://publications.aap.org/pediatrics/article/150/1/e2022057989/188348/Technical-Report-Breastfeeding-and-the-Use-of?searchresult=1?autologincheck=redirected (last accessed September 22, 2023).

[18] *World Health Organization's (WHO) Global Strategy for Infant and Young Child Feeding*, at 7–8. Available at: https://www.who.int/publications/i/item/9241562218 (last accessed September 22, 2023).

[19] Odom E. C., Li R., Scanlon K. S., Perrine C. G., Grummer-Strawn L., *Reasons for earlier than desired cessation of breastfeeding*. Pediatrics (2013); 131:e726–e732, e729.

[20] Morris, L., Lee, J., Williams, J., *Exposed: Discrimination Against Breastfeeding Workers*. WorkLife Law, at 7. Available at: https://worklifelaw.org/publication/exposed-discrimination-against-breastfeeding-workers/ (last accessed on May 11, 2023) (citing Bartick, M. L., & Reinhold, J. *The economic burden of suboptimal breastfeeding in the United States: a systematic review*. Pediatrics (2010); 126(3), e756–e768).

36.     As discussed, the benefits of breastfeeding are significant, but there are also drawbacks to not breastfeeding. Parents who do not breastfeed suffer heightened health risks "including breast and ovarian cancers, heart disease, postpartum depression, diabetes, and rheumatoid arthritis."[21]

### B.     Proper Workplace Accommodations for Pumping Are Critical

37.     Not having a secure space for nursing mothers can increase anxiety and feelings of being overwhelmed, which can have a negative impact on the mother's mental, physical, and emotional health. Nursing mothers who do not have adequate workplace support are at an increased risk of early weaning, illness, and job loss. Therefore, it is critical for workplaces to provide support for nursing mothers.

38.     In 2011, the U.S. Surgeon General released a Call to Action to Support Breastfeeding and noted that for employed mothers, "returning to work is a significant barrier to breastfeeding" because nursing mothers often face inflexibility and, among other things, lack a private place to express milk.[22] The Call to Action found that when mothers "do not have a place to breastfeed or express breast milk, they may resort to using the restroom for these purposes, an approach that is unhygienic and associated with premature weaning."[23]

39.     A study based on data from 2011 to 2013, after the Pumping at Work Act was enacted in 2010, found that workplace accommodations are a significant predictor of breastfeeding

---

[21] *Exposed: Discrimination Against Breastfeeding Workers*, s*upra* note 11, at 7, citing Am. Acad. of Pediatrics, Policy Statement, *Breastfeeding and the Use of Human Milk*, 129 PEDIATRICS e827, 32 (2012).

[22] *The Surgeon General's Call to Action to Support Breastfeeding, Barriers to Breastfeeding in the United States*, Office of the Surgeon General (US); 2011. Available at https://www.ncbi.nlm.nih.gov/books/NBK52682/ (last accessed September 22, 2023).

[23] *Id.*

12

duration.[24] The study found that nearly 50% of women reported that their postpartum employment plans affected breastfeeding-related decisions.[25] About a third of women indicated that employment posed a challenge to breastfeeding, and only 45% of women had access to a private space to pump milk.[26]

40.    A clean and secure lactation space is necessary for a mother to be able to pump milk comfortably and efficiently.[27] Without a clean, secure space, nursing mothers can experience anxiety and stress, which can negatively impact the mother's milk supply.

41.    The more a mother gets to pump her breast milk, the longer her milk supply/production lasts and the more breast milk the baby gets. Continuous pumping increases the chances of a longer supply of breastmilk.[28] Conversely, being unable to express milk when needed can result in a decrease in the individual's milk supply, forcing an earlier-than-recommended weaning of the child.[29]

---

[24] Kozhimannil, K. B., Jou, J., Gjerdingen, D. K., and McGovern, P. M., *Access to workplace accommodations to support breastfeeding after passage of the Affordable Care Act*, Women's Health Issues. 2016; 26(1): 6–13.

[25] *Id.*, at 8.

[26] *Id.*

[27] Whitley M.D., Ro A., Choi B. *Workplace breastfeeding support and job satisfaction among working mothers in the United States*. Am J Ind Med. 2019; 62(8):716–726, 717. Available at: https://pubmed.ncbi.nlm.nih.gov/31168846/ (last accessed September 26, 2023)

[28] *See* Bai Y., Wunderlich S.M. *Lactation accommodation in the workplace and duration of exclusive breastfeeding*. J Midwifery Womens Health. 2013; 58(6): 690–96, 697 and 695.

[29] Barriers to Breastfeeding in the United States, *Surgeon General's Call to Action to Support Breastfeeding, Barriers to Breastfeeding in the United States*, Office of the Surgeon General (US); 2011. Available at https://www.ncbi.nlm.nih.gov/books/NBK52688/ (last accessed September 22, 2023).

42.     When a mother's milk empties, there are neurological signals that release a hormone called prolactin, which triggers milk production. Limiting the amount a mother can pump decreases the amount of emptying and therefore decreases milk production.

43.     Limiting the amount a person can pump can also lead to mastitis, an inflammation of the breast tissue that may involve infection, abscess, pain, fever, and illness.[30] Another study found that mastitis is associated with an increased risk of premature weaning.[31] Even if women do not develop mastitis or other complications from engorgement, pumping while already engorged can cause nipple trauma and bruising. Additionally, inadequate pumping can reduce a mother's milk supply, and it can take much longer to bring the supply back up.[32]

44.     Moreover, a recent systematic review of studies on maternal mental health and breastfeeding showed that mothers who were not able to achieve their breastfeeding goals had negative mental health outcomes and put them at greater risk for depression, anxiety, and other mental health conditions.[33] Having proper workplace accommodations, like a clean and secure place to pump milk, can help nursing mothers achieve their breastfeeding goals and minimize the risk of maternal mental health problems, such as depression and anxiety. Nursing mothers who had access to supportive workplace accommodations can feel more confident and supported in the breastfeeding experience, which can play an important role in maternal mental health.[34]

---

[30] *Exposed: Discrimination Against Breastfeeding Workers*, s*upra* note 2 at 7, citing Lisa Amir. & The Academy of Breastfeeding Medicine Protocol Committee, ABM Clinical Protocol #4: Mastitis, Breastfeeding Medicine, 9 (5), 239 (Revised March 2014).

[31] *See supra* n. 24.

[32] *Id.*

[33] Yuen M., Hall O.J., Masters G.A., Nephew B.C., Carr C., Leung K., Griffen A., McIntyre L., Byatt N., Moore Simas T.A. *The Effects of Breastfeeding on Maternal Mental Health: A Systematic Review*. J Womens Health (Larchmt). 31(6): 787–807.

[34] *See supra* n. 24.

14

## C. *Employers Must Do More to Protect Breastfeeding Employees*

45.     Failing to provide adequate lactation accommodations remains a prevalent issue and can often force nursing mothers to stop breastfeeding or leave the workplace altogether.

46.     A report published in 2016 by the Center for WorkLife Law at the UC Hastings College of the Law found that cases where an employer denied accommodations to or discriminated against an employee because she was breastfeeding or needed to express milk during the workday increased 800% between 2005 and 2016.[35]

47.     According to a report released in 2019, which tracked 70 cases involving allegations of breastfeeding discrimination and retaliation that have written opinions issued between 2008 and April 2018, 63% of employees ended up losing their job (43% were fired and 20% resigned).[36]

48.     The women facing job loss for lack of lactation accommodation spanned from a taqueria cashier in California to a doctor in Georgia and a lawyer in New York.[37]

49.     For example, in 2019, Simone Teagle filed a lawsuit against the City of New York for the discrimination she experienced as a breastfeeding mother.[38] Teagle said that for nearly six

---

[35] Calvert, C. T., *Caregivers in the Workplace: FRD Update 2016*. Center for WorkLife Law at the UC Hastings College of the Law, at 17. Available at: https://worklifelaw.org/publications/Caregivers-in-the-Workplace-FRD-update-2016.pdf (last accessed May 10, 2023).

[36] *Exposed: Discrimination Against Breastfeeding Workers, supra* note 11, at 13.

[37] *Id.* citing *Dep't of Fair Employment & Hous. v. Acosta Tacos*, No. E200708 T-0097-00se, 2009 CAFEHC LEXIS 2, at *8–10 (Cal. Fair Employment & Hous. Comm'n June 16, 2009); *Wexler v. Kennesaw Pediatrics, P.C.*, No. 16-cv-1491, 2017 U.S. Dist. LEXIS 111037, at *2–3 (N.D. Ga. July 17, 2017); *Kim v. Goldberg*, 862 F. Supp. 2d 311, 315 (S.D.N.Y. 2012).

[38] *See Teagle et al. v. The City of New York et* al., No. 19-cv-7211 (E.D.N.Y); *see also* H.R. 3110, 117th Cong. (1st Sess. 2021), at 16.

months, she was forced to pump in a breakroom, a bathroom, the locker room, or her vehicle.[39] As a result, she "lost a lot of her milk supply."[40] The suit is still pending.

### D. The Law Before the PUMP Act

50. Despite this wide consensus in favor of pumping, and Congress having passed the Pumping at Work Act in 2010, for the past 12 years, a common problem faced by all nursing mothers who were not provided with sufficient lactation accommodation was the weak enforcement mechanism under the Pumping at Work Act. With limited remedies available, many of the claims in these cases based on violations of the Pumping at Work Act were dismissed.

51. Under § 207(r) of the Pumping at Work Act, the only remedies available were for unpaid minimum wages or overtime compensation. However, because employers are not required to pay employees who take breaks to pump, it was virtually impossible to hold accountable employers who failed to provide accommodations. As one court noted, with regards to the Pumping at Work Act, "there does not appear to be a manner of enforcing the express breast milk provisions."[41]

52. In one of a handful of cases in which the court permitted a § 207(r) claim to proceed, a postpartum bank teller was told she had to express milk in the bathroom. When she objected on the basis that the bathroom was unsanitary, she was eventually forced to leave work in the middle of the day to go home and pump.[42] She sued her employer, and the court only permitted the suit to

---

[39] *See NYPD Cop Sues City for $5 Million Amid Claims She Was Harassed for Pumping Breast Milk*, (October 18, 2018). Available at: https://news.yahoo.com/nypd-cop-sues-city-5-155315818.html (last accessed April 12, 2023).

[40] *Exposed: Discrimination Against Breastfeeding Workers, supra* note 11, at 12.

[41] *Salz v. Casey's Marketing Co.*, No. 11-cv-3055, 2012 U.S. Dist. LEXIS 100399, at *7 (N.D. Iowa July 19, 2012).

[42] *See Lico v. TD Bank,* No. 14-cv-4729, 2015 U.S. Dist. LEXIS 70978 (E.D.N.Y., 2015).

16

proceed because it found the plaintiff had alleged 40.35 hours of lost wages. The case was settled in 2017.

53.     In another case, the court only permitted a furniture salesperson's § 207(r) claim to proceed because she alleged that she had to leave the sales floor and pump in her car, which resulted in her losing sales commissions to other salespeople.[43]

54.     The Department of Labor similarly acknowledged the weak enforcement mechanism when it issued a notice stating that "[b]ecause employers are not required to compensate employees for break time to express breast milk, in most circumstances there will not be any unpaid minimum wage or overtime compensation associated with the failure to provide such breaks."[44]

55.     Without a proper enforcement mechanism, employers like Dollar General were permitted to, and did, freely violate the Pumping at Work Act with little fear of consequence.

56.     Ensuring that working mothers have the time and space to express breastmilk is not a partisan issue. Around the time that the PUMP Act was passed, politicians from across the political spectrum expressed support for strengthening protections for lactating mothers in the workplace.

57.     In a statement issued on March 8, 2021, in recognition of International Women's Day, President Biden said: "We must ensure that women can access affordable, high-quality health care throughout their lives, including maternal health care and the ability to breastfeed."[45]

---

[43] *See Poague v. Huntsville Wholesale Furniture*, 369 F. Sup. 3d 1180, 1199 (N.D. Ala. 2019).

[44] *Reasonable Break Time for Nursing Mothers*, 75 Fed. Reg. 80073, 80078.

[45] https://www.whitehouse.gov/briefing-room/statements-releases/2021/03/08/statement-by-president-biden-on-international-womens-day/ (last accessed May 11, 2023).

17

58.     Thereafter, in October 2021, Congresswomen Jaime Herrera Beutler, a Republican

Congresswoman from Washington, expressed her support for the PUMP Act stating:

> Making sure moms can pump at work promotes healthier families,
> and it's also important to help businesses recruit and retain the
> workforces they need. That's why I'm pleased the House approved
> this business-friendly, bipartisan legislation … that simply provides
> moms with reasonable opportunities to pump in their workplace. I'm
> proud to have worked with businesses, health care stakeholders, and
> parents in successfully leading this legislation that supports moms
> in Southwest Washington who are providing for their family's
> health and financial security.[46]

59.     On September 27, 2021, the White House issued a statement strongly supporting

the PUMP Act, stating that: No new mother should face unfair treatment in the workplace because

their employer refuses to provide them with [a] . . . private, clean space needed to adequately

express breast milk while at work, forcing them to choose between their health and the health of

her child, and earning a paycheck. Yet millions of new working mothers, disproportionately

working mothers of color, face this challenge every day.[47]

60.     Prior to the vote on the PUMP Act, Republican Senator Lisa Murkowski stated:

"With this bill, parents will be empowered to make their own choices on breastfeeding, and

businesses can improve retention of valuable employees. It's a win-win-win . . . What has been a

question is a women's protection at the jobsite to pump safely. If a mother chooses to breastfeed

her baby, she deserves the legal protection to do so without having to worry about it impacting her

career."[48]

---

[46] https://adams.house.gov/media-center/press-releases/adams-maloney-congressional-maternity-care-caucus-black-maternal-0 (last accessed May 11, 2023).

[47] https://www.whitehouse.gov/wp-content/uploads/2021/09/H.R.-3110-SAP.pdf (last accessed May 11, 2023).

[48] https://www.newsweek.com/full-list-senators-who-voted-against-breastfeeding-workers-protections-1769450 (last accessed May 11, 2023).

61.     Numerous organizations outside of government also expressed strong support for the PUMP Act. For example, in a news release published on October 22, 2021, on the U.S. Breastfeeding Committee's website, Vania Leveille, Senior Legislative Counsel for the ACLU, said: "Employers in every industry should have policies in place to accommodate the needs of pregnant and breastfeeding employees but, unfortunately, that is not currently the case. Instead, too many workers are penalized, discriminated against, terminated, or left without options when they try to pump breast milk at work."[49]

62.     On the other hand, organizations that represent businesses also saw the value in passing the PUMP Act. The National Retail Federation's Senior Vice President for Government Relations told the Members of the House in a letter dated October 12, 2021, that "[t]he PUMP Act is a sound piece of bipartisan legislation that will allow nursing mothers to maintain their vital role the American workplace."[50]

63.     Similarly, in a letter sent to all the Members of Congress, Neil L. Bradley, Chief Policy Officer at the U.S. Chamber of Commerce, stated: "The PUMP Act is a win-win for nursing mothers and the businesses that employ them. Employers would get clarity and a way to avoid litigation, and nursing mothers would be able to remain in the workforce. The Chamber is pleased to strongly support this legislation."[51]

---

[49] https://www.usbreastfeeding.org/usbc-news--blogs/pump-for-nursing-mothers-act-passes-with-bipartisan-support-in-us-house-of-representatives (last accessed May 11, 2023).

[50] Letter from David French to the Honorable Nancy Pelosi (Oct. 12, 2021) *available at* http://d22f3d5c92fe72fd8ca1-d54e62f2f7fc3e2ff1881e7f0cef284e.r22.cf1.rackcdn.com/2021%20Hill%20Letters/NRF%20Support%20Letter%20-%20PUMP%20Act%20-%20October%2012%202021.pdf (last accessed June 22, 2023).

[51] *U.S. Chamber Letter on the PUMP Act* (Dec. 20, 2022) *available at* https://www.uschamber.com/employment-law/u-s-chamber-letter-on-the-pump-act (last accessed June 22, 2023).

64. Indeed, private industry also recognizes and supports the increasing need to protect and accommodate nursing mothers. There is a growing industry for the sale of "portable lactation pods," which are specially designed private spaces available to be used in various public and private venues to support breastfeeding mothers.[52] These pods are intended to address the need for access to adequate space for breastfeeding, away from public spaces or unhygienic restrooms. The growing presence of these lactation pods in the United States highlights a societal effort to recognize the importance of well-being of both new mothers and infants.

### E.   The PUMP Act

65. Given the acknowledged problems with the Pumping at Work Act, in late 2022, Congress passed the PUMP Act with strong bi-partisan majorities in both houses. In the House of Representatives, it passed with a 276-member majority,[53] and in the Senate, it passed with a near-unanimous vote of 92 to 5.[54]

66. On December 29, 2022, the President signed an omnibus spending bill (P.L. 117-58), which included the PUMP Act.

67. According to both the House bill (H.R. 3110)[55] and the relevant Senate Amendment (S. Amdt. 6595),[56] the purpose of the PUMP Act was "[t]o amend the [FLSA] to expand access to breastfeeding accommodations in the workplace, and for other purposes."

---

[52] For example: Mamava Inc., BrighterBooth, Nessel, and Panel Built Incorporated all market and sell portable, free-standing, and/or prefabricated lactation spaces.

[53] https://clerk.house.gov/Votes/2021331?BillNum=3110 (last accessed May 11, 2023).

[54] https://www.senate.gov/legislative/LIS/roll_call_votes/vote1172/vote_117_2_00417.htm (last accessed May 11, 2023).

[55] https://www.congress.gov/bill/117th-congress/house-bill/3110/text (last accessed May 11, 2023).

[56] https://www.congress.gov/amendment/117th-congress/senate-amendment/6595 (last accessed May 11, 2023).

20

68.     Specifically, the PUMP Act amended the FLSA to include § 218d, which provides that:

> (a) An employer shall provide —
>
> ''(1) a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk; and
>
> ''(2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

29 U.S.C. § 218d.

69.     Notably, the statute states that the "employer **shall** . . . provide a place…" for nursing parents to express milk. (Emphasis added.) The word "shall" in § 218d imposes an affirmative duty on the employer to provide a clean, secure space because, as Congress found, "[a] private space to express breast milk is critical for nursing employees."[57]

70.     Importantly, the PUMP Act also strengthened the relief available by inserting specific language in § 216(b) (one of the enforcement sections of the FLSA) stating that:

> Any employer who violates the provisions of section 15(a)(3) **or 18D of this Act** [29 USCS § 215(a)(3) or 218d] **shall be liable for such legal or equitable relief as may be appropriate** to effectuate the purposes of section 15(a)(3) or 18D [29 USCS § 215(a)(3) **or 218d**], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b) (emphasis added, which reflects the amendments to § 216(b)).

71.     Congress intended this addition to correct for the lack of enforcement provided for in the Pumping at Work Act. According to the legislative intent behind the PUMP Act, one of the purposes was to provide additional forms of relief:

---

[57] H.R. 3110, 117th Cong. (1st Sess. 2021), at 10.

21

…recovery only for unpaid minimum wages or overtime compensation renders employees unable to enforce current break time and space requirements in a private right of action…even if unpaid minimum wage or overtime compensation were recoverable, lost wages are often an inadequate or inappropriate form of relief… H.R. 3110 would allow workers to seek legal ***and equitable relief***… Allowing for legal and equitable relief under H.R. 3110 will also ***allow nursing employees to recover for harm to their physical and mental health***…***including for medical costs or emotional distress, and punitive damages for this type of harm***.[58]

### F. *Guidance from the Department of Labor*

72. On May 17, 2023, The U.S. Department of Labor Wage and Hour Division ("WHD") published Field Assistance Bulletin No. 2023-02 (the "FAB"), which provides guidance to agency officials responsible for enforcing the PUMP Act.[59] The FAB provides insight into how the WHD will enforce employees' rights under the PUMP Act.

73. Regarding an employee's right to breaks to pump breast milk, the FAB emphasizes that employees are entitled to a "reasonable break ***each time*** such employee has need to pump breast milk at work for one year after the child's birth. An employer may not deny a covered employee a needed break to pump."[60]

74. Regarding the space requirements, employers must provide a "functional space" that is "(1) shielded from view; (2) free from intrusion from coworkers and the public; (3) available each time it is needed by the employee; ***and*** (4) not a bathroom."[61]

---

[58] H.R. 3110, 117th Cong. (1st Sess. 2021), at 16 (emphasis added).

[59] U.S. Department of Labor, Wage and Hour Division, Field Assistance Bulletin No. 2023-02. Available at: https://www.dol.gov/sites/dolgov/files/WHD/fab/2023-2.pdf (last accessed May 24, 2023).

[60] *Id.* at 2 (emphasis in original).

[61] *Id.* at 4 (emphasis in original).

75.     The FAB states: The location **must be functional as a space for pumping**.[62] It must have a place for the nursing employee to sit, a flat surface (other than the floor), and employees must be able to store milk while at work.[63]

76.     Further, an employer who violates a nursing mother's right to reasonable break times and a functional space to pump breast milk is liable "for appropriate legal or equitable remedies . . . . [which] may include **compensatory damages and make-whole relief**, such as economic losses that resulted from violations, **and punitive damages** where appropriate. These remedies are available regardless of whether the employee has also experienced retaliation."[64]

77.     An employee may file a private cause of action seeking appropriate remedies, and there is "***no waiting time***" for an employee bringing a private suit "to enforce the reasonable break time requirement."[65]

78.     Finally, employers are required to "post and keep posted a notice explaining the FLSA [and PUMP Act provisions] in conspicuous places in every establishment where such employees are employed."[66]

79.     On September 18, 2023, the Department of Labor's Wage and Hour Division found "supervisors employed by Aimbridge Employee Service Corp. – operating as Hammock Beach Golf Resort and Spa – failed to provide a private place for a worker to express milk for her newborn

---

[62] *Id.* (emphasis added).

[63] *Id.*

[64] *Id.* at 7 (emphasis added).

[65] *Id.* at 8 (emphasis in original).

[66] *Id.*

baby, in violation of" the PUMP Act.[67] The agency found that it took supervisors nearly four months to provide an employee with a suitable space to pump milk, and even then the space — a manager's office — lacked privacy as the employee learned "when another worker entered the room while the mother was attempting to pump milk."

80. Division Director, Wildalí De Jesús, stated: Employers who fail to provide break time and a private place as the law requires are creating a barrier for women to balance their career and a child's needs once they return to work after having a child."[68] "There are long term benefits to breast feeding both for families and employers. Mothers who breast feed generally take less time off work due to childhood illnesses," added De Jesús.

81. Plaintiffs seek this Court's assistance on behalf of all nursing mothers who work and their infant children to improve breastfeeding outcomes by making clear that employers cannot deny their employees adequate lactation accommodation in the workplace.

## V.    DEFENDANT DENIES PLAINTIFFS THEIR RIGHTS TO ACCOMMODATION

### A.    *Plaintiff Alexis Flint*

82. Plaintiff Flint began working for Dollar General in July 2022 as a key holder[69] at Dollar General Store 21764 located at 12220 Warden Avenue in Alden, New York.

---

[67] *U.S. Department of Labor Finds Palm Coast Resort Operator Denied Employee Private Space to Express Milk for Newborn, As Federal Law Requires.* Available at: https://www.dol.gov/newsroom/releases/whd/whd20230918 (last accessed September 22, 2023).

[68] Id.

[69] A key holder is an employee who has keys to the store and are responsible for opening and closing the store along with operating the cash register and managing the store in the absence of a manager.

83.     In October 2022, Ms. Flint gave birth to her child. She took a few months of work and returned to work in March 2023. However, when Ms. Flint returned, Dollar General did not accommodate her request to pump breast milk at work.

84.     When Ms. Flint returned, she spoke with her managers, Michelle Lavis and Jessica Wagner, about accommodations for pumping breast milk at work, Flint was told that she should pump in the bathroom. Ms. Flint pumped in the bathroom for over a month before abandoning pumping all together due to the lack of breaks to pump.

85.     Both Ms. Lavis and Ms. Wagner were made aware that Flint was pumping in the bathroom and did nothing to provide a secure space for her. As noted, there are many options available to companies such as Dollar General to accommodate lactating employees like Ms. Flint. Unfortunately, Dollar General refused to implement any of those options.

86.     Ms. Flint also was not provided with appropriate break times to pump.  Not having enough staff to cover the floor left Ms. Flint often working by herself, which meant that Ms. Flint could not leave the floor and take a break to pump. On those days when there was not sufficient staff coverage, Ms. Flint either could not pump at all or had to wait until her shift was over.

87.     Eventually, Ms. Flint left Dollar General in May 2023.

88.     Dollar General's lack of pumping accommodation impacted Ms. Flint both physically and mentally. She experienced a reduction in her milk supply, which has caused her great distress.  Ms. Flint also felt dehumanized and humiliated because she was made to pump in the bathroom. She also felt embarrassed each time she had to leave the bathroom holding her pumping equipment.

89.     Dollar General did not provide Ms. Flint with sufficient break times "each time" she needed to pump. Indeed, there were days where Ms. Flint did not get to take any breaks at all

to pump. Ms. Flint's supervisors refused to take action or set up processes to ensure Ms. Flint was receiving the accommodation to which she is entitled. For example, Dollar General could have re-arranged staffing for the limited time while Ms. Flint was pumping to make sure there was adequate coverage to allow Ms. Flint to take pumping breaks, but it chose not to. Nor did those supervisors provide Ms. Flint with a "functional space" to express breast milk. Again, Dollar General could have set up a temporary pumping space for Ms. Flint, but it chose not to. In all these ways, Dollar General violated the PUMP Act with regard to Ms. Flint.

### B. *Plaintiff Jamie Wood*

90. Plaintiff Wood began working for Dollar General in November 2022 as a part-time cashier in Lehigh Acres, Florida.

91. When she started working at Dollar General, Ms. Wood told management that she was a breastfeeding mom and would need a clean and secure place to pump breast milk while she was at work. The manager, "Richard," took her to the stockroom and told her she could pump there or she could go to her car. The stockroom was dusty and unsanitary and did not have a lock. As a result, Ms. Wood pumped in her car until April 2023 when it started to get too hot to pump in her car. At that time, Ms. Wood asked her manager about a private secure place to pump and Richard told her the same thing as before, she could either pump in the stock room or her car. When Ms. Wood responded that neither were suitable locations to pump, Richard told her "I don't know what to tell you, it is what it is." Because it was growing increasingly hot in her vehicle, Ms. Wood pumped in the unsanitary stockroom.

92. Ms. Wood worked seven-hour shifts at Dollar General and did not have a set time for breaks (other than lunch). She would get a break only when the traffic in the store was slow enough to allow her to leave the floor. The manager told her that she could use her lunch break to

pump and that she should clock out and pump during her lunch break. This was true even while Ms. Wood requested pumping accommodations. Dollar General simply refused to allow her the break time she needed to pump.  In July 2023, Ms. Wood left her employment at Dollar General.

93.     "It is what it is" is not an acceptable or lawful response to Ms. Wood's request for lactation accommodations. Federal law required Dollar General to provide Ms. Wood with a sanitary, secure, and functional space to pump.  Richard's response to Ms. Wood demonstrates what appears to be a prevailing approach within Dollar General, which is to dismiss nursing mothers' requests for time and functional, sanitary spaces to pump as requests for special treatment, rather than as a right afforded to those mothers by Federal law.

94.     Thus, Dollar General, acting through supervisors and managers, and on information and belief pursuant to organization-wide policies (or lack thereof), did not provide Ms. Wood with sufficient break times "each time" she needed to pump. Nor did it provide her with a functional, sanitary, and private space to pump. Dollar General's acts violate the PUMP Act.

95.     Dollar General's failure to provide Ms. Wood with lactation accommodation impacted Ms. Wood both mentally and physically. She experienced anxiety, humiliation, and emotional distress because of Dollar General's actions. She also experienced a significant reduction in her milk supply, which has caused her distress.

96.     In accordance with 29 C.F.R. § 516.4, Dollar General should have alerted nursing employees like Ms. Flint and Ms. Wood about their rights to sufficient lactation accommodation by posting information in conspicuous locations at Dollar General locations across the country. Upon information and belief, Dollar General did not make such information available to ensure that employees were aware of their rights to take reasonable breaks and to have a secure place to pump.

27

97.     As Plaintiffs experiences show, in practice, Dollar General does not provide accommodations for nursing mothers. Dollar General does not have an adequate or specific practice or a policy regarding secure, private, functional spaces for nursing mothers that is enforced at its locations across the country. Its failure to provide accommodations for nursing mothers is a violation of the law. The FLSA requires employers to provide reasonable accommodations for nursing mothers, such as break times and a private place to pump breast milk. Dollar General's refusal to do so denies nursing mothers their legal rights, makes it difficult for them to continue working while breastfeeding, and has impacted them mentally and physically.

98.     Dollar General's failure to provide Ms. Flint, Ms. Wood, and others similarly situated employees with reasonable breaks and a secure space, shielded from view, to express milk, caused them anxiety and uncertainty about their ability to continue breastfeeding. Returning to work after having a baby and continuing to pump during working hours requires mothers to have stamina and persistence. It requires upkeep of fluids and nutrition to ensure a continuous flow of milk production. Sufficient time and a functional space are necessary because to begin the flow of milk, mothers must be in a relaxed and rested state, not stressed and anxious while pumping in the bathroom or in their personal vehicles in the public parking lots, in plain view. The stress and anxiety of breastfeeding in a dirty, uncomfortable space, worrying about being seen by the public or colleagues, and fear of not adequate having enough time to pump until empty, can jeopardize the flow of milk and may result in mothers not being able to express as quickly as someone who is relaxed and certain that they will not be intruded upon.[70]

---

[70] *See* H.R. 3110, 117th Cong. (1st Sess. 2021), at 10 ("Breastfeeding mothers must feel safe in order to let down breast milk, and a reasonable guarantee of privacy is a key part of that safety. If a nursing mother feels unsafe or emotionally distressed, her production of oxytocin may be inhibited, which can create a physiological barrier to lactation." (citation omitted)).

99.     Ms. Flint and Ms. Wood were damaged in that they experienced emotional distress and anxiety.

## VI.     <u>COLLECTIVE ACTION ALLEGATIONS</u>

100.     The "FLSA Collective" consists of all persons who have been or currently are employed by Dollar General across the country who (1) were or are lactating (e.g., individuals who express breast milk) from December 29, 2022, to the resolution of this action, (2) were or are non-executive employees of Dollar General, and (3) were or are not provided with a sanitary "functional space," upon request, that is (a) free from intrusion, (b) shielded from view, (c) available each time it is needed, and (d) not a bathroom; OR were denied a break to pump breast milk while at work in the year following the birth of the child.

101.     As of March 3, 2023, Dollar General had over 19,000 locations across 47 states and employed over 170,000 full-time and part-time employees. Upon information and belief, there are numerous similarly situated employees who are working or worked for Dollar General and are or were unlawfully denied their rights under the PUMP Act.

102.     The number of affected employees can be ascertained by Dollar General based on its payroll and personnel records. Collective members may be informed of the pendency of this collective action by direct mail and/or publication at the various Dollar General locations throughout the country.

103.     This action is properly maintained as a collective action under 29 U.S.C. § 216(b) because all class members are similarly situated. The affected individuals were and continue to be female employees of Dollar General who: (1) required accommodations for lactation at work from December 29, 2022, to the present; (2) work or worked as non-executive employees for Dollar

General that were subject to the same timekeeping and break policies; and (3) informed their supervisor or manager that they needed lactation accommodations at work.

104. Dollar General has boasted about its low-cost, no-frills building model that allows the company to deliver low retail prices. However, with an average store size of 7,500 square feet, Dollar General could have provided their employees with a functional space that is shielded from view, free from intrusion, available when needed, and not a bathroom.

105. As discussed above, companies such as Dollar General can accommodate nursing employees by purchasing portable spaces, additional examples of which are shown below. These portable lactation pods are available at a variety of different prices and sizes and can be stored off-site. They are marketed to provide a secure, sanitary space with a flat surface to comfortably accommodate all nursing mothers. This is a widely available and simple solution for Dollar General to accommodate its lactating employees.

 

106. Dollar General could also have accommodated its nursing employees by providing them with access to clean offices and by installing locks on the doors to ensure they were secure. However, Dollar General chose not to do so.

107. Furthermore, Dollar General failed to provide its nursing employees with breaks each time they needed to pump. Dollar General's refusal to accommodate employees to allow them break time to pump is a clear violation of the PUMP Act and the rights of nursing mothers.

108.     Dollar General's willful policies and practices denied and continue to deny members of the FLSA Collective their rights under the PUMP Act. Dollar General's actions were willful because the PUMP Act received substantial publicity at the time of its passage and thereafter. The legal obligation to provide nursing employees with reasonable breaks and secure spaces has been in effect since 2010. Dollar General has career employment attorneys, including a Deputy General Counsel and a General Counsel and has in-house legal teams whose jobs require staying up to date with recent laws and regulations and their potential impact on Dollar General's operations. Therefore, Dollar General knew or should have known about its obligation to provide lactation accommodations to its employees. Once Plaintiffs informed their employers about the lack of accommodation, Dollar General had notice of its non-compliance and, by failing to act, willfully refused to provide sufficient accommodation.

109.     Dollar General claims that it "strive[s] to create an environment where our employees feel respected, safe, empowered, and valued." *Id.* One of Dollar General's long-term operating priorities is to invest in its "diverse teams through development, empowerment and inclusion." However, refusing to provide lactation accommodations to nursing employees falls far short of creating such an environment, and instead results in the unlawful denial of employees' rights under the PUMP Act.

<u>**FIRST COUNT**</u>

**Violation of the FLSA and PUMP Act**
**[29 U.S.C. § 218d(a)(1)]**
**(Brought on Behalf of Plaintiffs and the FLSA Collective)**

110.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

111.     Plaintiffs and the FLSA Collective are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

31

112.     The FLSA, at 29 U.S.C. § 218d(a)(1), states that an "employer shall provide: (1) a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk . . . ."

113.     In violation of the PUMP Act, Dollar General, throughout the relevant period, failed to provide reasonable break times for employees "to express breast milk for 1 year after the child's birth each time such employee needed to express milk. . . ." 29 U.S.C. § 218d(a)(2).

114.     Dollar General, through supervisors and management employees, failed to provide reasonable break times for Plaintiffs and similarly situated employees to express breast milk in violation of the FLSA.

115.     On information and belief, Dollar General, through supervisors and management employees, knowingly, willfully, and systematically engaged in this unlawful practice of refusing to provide reasonable breaks to express breast milk to Plaintiffs and those similarly situated in violation of the PUMP Act.

116.     Plaintiffs will request that the Court authorize notice to all current and former employees of Dollar General who required a space to pump milk from December 29, 2022 to the date the notice is sent to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking damages, attorneys' fees, litigation costs, declaratory and injunctive relief, and all other relief available.

117.     Dollar General violated Plaintiffs' and the FLSA Collective's rights under the PUMP Act by failing to provide reasonable break times to express breast milk.

118.     Dollar General violated Plaintiffs' and the FLSA Collective's rights by failing to institute policies and practices that comply with the PUMP Act.

32

119. Dollar General is liable to Plaintiffs and the FLSA Collective for legal and equitable relief in the form of damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses. *See* 29 U.S.C. § 216(b).

## SECOND COUNT

### Violation of the FLSA and PUMP Act
### [29 U.S.C. § 218d(a)(2)]
### (Brought on Behalf of Plaintiffs and the FLSA Collective)

120. Each of paragraphs 1 through 119 is incorporated by reference as though fully set forth herein.

121. Plaintiffs and the FLSA Collective are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

122. The FLSA, at 29 U.S.C. § 218d(a)(2), states that an "employer shall provide: . . . (2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk."

123. In violation of the PUMP Act, Dollar General, throughout the relevant period, failed to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 218d(a)(2).

124. Despite requests from nursing employees, Dollar General, through supervisors and management employees, failed to provide a "functional," non-bathroom space within which Plaintiffs and similarly situated employees could express breast milk without the worry of being intruded upon, in violation of the FLSA.

125. On information and belief, Dollar General, through supervisors and management employees, knowingly, willfully, and systematically engaged in this unlawful practice of refusing

33

to provide sufficient lactation support to Plaintiffs and those similarly situated, in violation of the PUMP Act.

126.    Plaintiffs will request that the Court authorize notice to all current and former employees of Dollar General who required and requested a space to pump milk from December 29, 2022 to the date the notice is sent to inform them of the pendency of this action and their right to "opt in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking damages, attorneys' fees, litigation costs, declaratory and injunctive relief, and all other relief available.

127.    Dollar General violated Plaintiffs' and the FLSA Collective's rights under the PUMP Act by failing to provide an appropriate clean and safe place that is free from intrusion within which to pump breast milk.

128.    Dollar General violated Plaintiffs' and the FLSA Collective's rights by failing to institute policies and practices that comply with the PUMP Act.

129.    Dollar General is liable to Plaintiffs and the FLSA Collective for legal and equitable relief in the form of damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses. *See* 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiffs pray for the following relief on behalf of themselves and the FLSA Collective:

A.    An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b) and appointing the undersigned as Class Counsel and Plaintiffs as class representatives;

B.    An Order from this Court ordering Dollar General to post a copy of an agreed-upon and court-approved notice in a common space visible to employees at each Dollar General location across the country;

C.    An Order from this Court ordering Dollar General to provide the undersigned with the names, addresses, email addresses, and telephone numbers of all female employees who, from January 1, 2022, to the present, have taken leave from work under the Family Medical Leave Act;

34

D.      An Order from this Court ordering Dollar General to send, via email, a copy of the agreed-upon and court-approved notice to all female employees who, from January 1, 2022, to the present, have taken leave from work under the Family Medical Leave Act;

E.      Adjudicating and declaring that Dollar General's conduct as set forth herein and above is in violation of the FLSA;

F.      Adjudicating and declaring that Dollar General violated the FLSA by failing to provide reasonable break time and private, sanitary, non-bathroom lactation spaces for nursing mothers;

G.      Declaratory and injunctive relief as necessary and appropriate, including enjoining Dollar General from further violations of the FLSA;

H.      Awarding Plaintiffs and the FLSA Collective legal and equitable damages in an amount consistent with the FLSA;

I.      Awarding Plaintiffs reasonable attorneys' fees and all costs of this action, to be paid by Dollar General, in accordance with the FLSA;

J.      Awarding pre-and post-judgment interest and court costs as further allowed by law;

K.      Granting Plaintiffs and the FLSA Collective leave to add additional plaintiffs by motion, the filing of written opt in consent forms, or any other method approved by the Court; and

L.      Awarding any further legal or equitable relief the Court deems just, equitable, and/or appropriate.

**SIRI & GLIMSTAD LLP**

/s/*R. Scott Pietrowski*
R. Scott Pietrowski (Bar No. 019853)
Lisa Considine (*pro hac vice* to be filed)
Oren Faircloth (*pro hac vice* to be filed)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: spietrowski@sirillp.com
E: lconsidine@sirillp.com
E: ofaircloth@sirillp.com
*Attorneys for Plaintiffs and the FLSA Collective*